UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | |
| | ) | Case No. 2:21-CR-109 |
| JOHN GRIFFIN | ) | |

## MOTION FOR DETENTION

NOW COMES the United States of America, by and through its attorney, Nikolas P. Kerest, United States Attorney for the District of Vermont, and moves for pretrial detention of the above-named defendant pursuant to 18 U.S.C. § 3142(e) and (f).

**I.  Procedural History**

On December 9, 2021, the Grand Jury in Burlington returned an Indictment charging the defendant John Griffin with three counts of violating 18 U.S.C. § 2422(b) by using a facility of interstate commerce to try to persuade, induce, entice and coerce minor girls to engage in illegal sexual activity. As the Indictment explains, Griffin's attempts involved meeting persons on-line who identified as sexually submissive, then seeking to persuade them to allow Griffin to train their minor daughters in sexual submission. Count Three of the Indictment specifies that from June to July 2020, Griffin interacted with one such person, a mother of a nine-year old daughter, and paid her to travel with her daughter from

1

Nevada to Boston.  When the mother and child arrived in Boston, Griffin picked them up and drove them to his Ludlow, Vermont ski house, where the child was directed to engage in illegal sexual activity.

The FBI arrested Griffin on December 10 in New Haven, Connecticut.  During Griffin's initial appearance before United States Magistrate Judge Robert Spector, Griffin did not contest the United States' motion for pre-trial detention (doc. 32-1), indicating he wished to preserve his option to litigate his pre-trial detention in the District of Vermont.  Magistrate Judge Spector therefore granted the United States' motion, noting that Griffin requested a detention hearing in Vermont and specifying that the detention order was "without prejudice to reconsideration so that defense counsel may prepare a bond package for consideration in the District of Vermont at some point in the future."  Doc. 32-6, at 3.

Griffin's counsel has advised that Griffin will be filing a motion for pre-trial release.  The United States opposes Griffin's release and moves for his continued detention.

**II.     Eligibility for Detention**

The defendant is eligible for detention because he is charged with a felony that involves a minor victim.  18 U.S.C. § 3142(f)(1)(E).  The Grand Jury has charged Griffin with two counts of attempting to persuade, induce, entice, and

coerce minor girls to engage in illegal sexual activity by trying to persuade their parents to make them available to him for sexual training, and one count of succeeding in such an attempt by, among other means, paying for a nine-year-old girl to travel to Vermont, where she was directed to, and did, engage in criminal sexual activity.

### III. Rebuttable Presumption

The United States invokes the rebuttable presumption against the defendant pursuant to 18 U.S.C. § 3142(e)(3)(E) "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." The presumption applies because, as noted above, the Grand Jury has returned an Indictment charging Griffin with offenses involving minor victims under 18 U.S.C. § 2422(b). *See United States v. Ghislaine Maxwell,* 527 F.Supp.3d 659, 663 (S.D.N.Y. 2021); *United States v. Robert Sylvester Kelly*, 2020WL2528922 (E.D.N.Y May 15, 2020), at *1. This presumption places the burden on Griffin to come forward with evidence to rebut it. Even if he does present evidence, the Court must consider the factors listed in § 3142(g) to assess "whether the presumptions of dangerousness and flight are rebutted." *United States v. Mercedes*, 254 F.3d 422, 436 (2d Cir. 2001).

## IV. Consideration of Statutory Factors

The Court should detain the defendant because consideration of the factors listed in 18 U.S.C. § 3142(g) shows there are no conditions of release which will reasonably assure the defendant's appearance as required and ensure the safety of the community. In summary, Griffin is charged with a crime involving the sexual assault of a nine-year old child that carries a 10-year mandatory minimum sentence upon conviction. The weight of the evidence against him is substantial. The evidence includes: Griffin's communications with the mother of the nine-year old, and others, admitting his sexual interest in minor girls; visual confirmation of his involvement with the naked child; and efforts to pay-off a potential witness after the child returned to Nevada. As shown below, Griffin has tried to deceive, delete, and spend his way out of being held accountable. He is a wealthy man who will be desperate to avoid facing justice. He has history of mental illness and substance abuse and has recently consumed intoxicants. For these, and other reasons discussed below, the Court should conclude there are no conditions that will assure Griffin's continued appearance or the safety of the community.

### A. Nature of the Offense

Section 3142(g)(1) directs the Court to consider "the available information concerning – (1) the nature and circumstances of the offense charged, including whether the offense . . . involves a minor victim[.]" As the Indictment explains,

John Griffin repeatedly sought to persuade, induce, entice, and coerce minor girls to be trained by him to be sexually subservient. In July 2020, Griffin paid for a mother and her nine-year-old daughter to travel from Nevada to Boston, where Griffin picked them up and drove them to his ski house in Ludlow, Vermont. Prior to the trip, Griffin advised the mother that women "are in actuality, naturally, the dirtiest sluts possible, in EVERY metric," that "a woman is a woman regardless of her age," and that it was the mother's "job, in concert with me, [to] see that" the mother's other daughter, then 13 years old, be "trained properly."

Prior to that, Griffin advised another parent that his training methods involved removing clothing, touching, spanking, and "cock worship," and that he had trained girls as young as seven years of age.

The seriousness of the charged offense is illustrated by the sentence Griffin faces if convicted – not less than 10 years of imprisonment and up to lifetime incarceration. "The deprivation of liberty imposed by imprisonment makes the penalty the best indicator of whether the legislature considered an offense to be serious." *United States v. Epstein,* 425 F.Supp.3d 306, 317 (S.D.N.Y. 2019) (internal quotation marks, ellipses, and brackets omitted). In *Epstein*, the defendant faced up to 45 years of incarceration, *id.*; here the potential sentence is life. A preliminary Sentencing Guideline analysis suggests the advisory Guideline range could be substantially greater than 10 years. Even without regard to the

potential sentence, as was the case in *Epstein*, "the crimes [Griffin] has been charged with are among the most heinous in the law principally, in the Court's view, because they involve minor girls." *Id.* (citing research indicating "recidivism rates are underestimates of the true reoffense rate of sex offenders"). *See also Maxwell,* 527 F.3d at 664 (where the charged crimes involve a minor victim, the first § 3142(g) factor weighs "strongly in favor of detention.").

      B.  Weight of the Evidence

The Bail Reform Act also directs the Court to consider the "weight of the evidence against" Griffin. 18 U.S.C. § 3142(g)(2). The weight of the evidence against Griffin is substantial.[1]

It includes Griffin's admission to the FBI made on September 2, 2020 that he met the 9-year-old's mother online on a sex-themed website, discerned she was "submissive" and "open-minded," and chatted with her over Kik and other platforms before paying her to travel to Boston with her daughter. He admitted to picking the mother and daughter up from Logan Airport in his Tesla and driving them to his Vermont ski house. Griffin also admitted to witnessing the child being

---

[1] The United States proffers the information in this Motion to inform the Court's consideration of the weight of the evidence, Griffin's history and characteristics, and the other § 3142(g) factors. *See United States v. Martir,* 782 F.2d 1141, 1145 (2d Cir. 1986) (recognizing propriety of proceeding by way of proffer at detention hearing); *Epstein,* 425 F.Supp.3d at 313 (2019) ("the Government is entitled to present evidence supporting remand by way of proffer, among other means.")

employed to perform BDSM sex acts on the mother, but claimed the child's participation in sexual activity was the mother's idea and denied knowing that this activity would occur.

Griffin's denials and deflections are contradicted by the later-discovered contents of Griffin's chat communications with the girl's mother, which Griffin attempted to delete, and several other parents of minor girls. Those other communications included:

- On January 14, 2020, after discussing the involvement of a woman's minor daughter in sexual activity, the woman told Griffin that "I need to know we are both ultimately safe and not going to jail," and Griffin responded: "Ok. We won't document any of this and if we do we will store it encrypted".

- On February 21, 2020, Griffin offered $30,000 for a "mother daughter weekend or week with me." For the $30,000 offer, while explaining that he did not want to have intercourse with the daughter, Griffin was clear: "will there be SEXUALITY involved??? Of course, that's the point."

- On March 9, 2020, Griffin offered a woman $1200 for sex, and then stated: "There is a better deal to be had though... 5k if the kids are in the room."

7

- On June 10, 2020, when the person Griffin was chatting with admitted to him, "I'm so sick she was a baby and I was horny I took her into my bedroom layed [sic] her down on my pillow and licked her while I grinded on a pillow," Griffin's response was "You need to promise me that you will always understand what you're doing is right ok?"

Furthermore, the child described in Count Three of the Indictment has stated that while she was in Vermont, *Griffin* sexually assaulted her, and addressed her as a "little slut," "little whore," and "little bitch." The child's description of Griffin's language, is consistent with Griffin's language in chat conversations discovered by the FBI, including:

- On January 14, 2020, advising a mother of a minor daughter that "If you agree, whatever we do going forward must in some way involve your daughter. I shouldn't even call her that because technically she is just another piece of shit whore.";

- On June 10, 2020, telling the mother described above who admitted to licking her own baby daughter, that "You need to think of her as what she is[.] She's a bitch and a whore[.] Do you understand?" and "Think of her that way it will help you";

- On June 13, 2020, telling the mother involved in Count Two of the Indictment that "There is nothing you want more than to see that little bitch trained, is there"; and
- On June 14, 2020 (to the mother in Count Three, referring to her 13-year-old daughter), "You said the whore she is is already apparent?"

The evidence against Griffin also includes a video captured by a drone operated by Griffin as it returned to Griffin's Ludlow ski house shortly after 5am on July 20, 2020, showing the *completely naked* nine-year-old girl, standing immediately next to Griffin in his underwear. The mother is not seen in the video. When confronted with this video during an interview by FBI agents, Griffin's first response was merely to suggest he was not looking at the naked girl, despite that she was standing so close to him to be touching.

Evidence of Griffin's sexual interest in the daughter also includes data from Griffin's cell phone showing that during her time in Vermont, Griffin's online activity included viewing web-pages featuring pornographic videos about sex with mothers and daughters.

The evidence also consists of messaging between Griffin and another member of the girl's family after the nine-year-old and her mother returned to Nevada. The other relative sent a message to Griffin in August 2020 part of which

included: "Im good on that, u got urself in a once in a life". [2] Griffin's response included "Look, as I've told you, I didn't do anything wrong". Less than five minutes later, the relative texted that the mother was "too pilled out to remember, little one do," and "U lmk if ur feeling helpful within the hour or so." Griffin sent the relative $4,000 via Venmo a short while later.

This apparent pay-off of a potential witness is not only further evidence of wrong-doing, it is an independent reason for Griffin's detention. Indeed, making payments to a potential witness in an apparent effort to buy their silence itself justifies Griffin's pre-trial detention. *See United States v. Epstein*, 425 F.Supp.3d 306, 318 (S.D.N.Y. 2019) (discussing payments from the defendant to potential witnesses and observing "even a single incident of witness tampering has been a traditional ground for pretrial detention by the courts" (citation and internal quotation marks omitted)).

### C. Griffin's History and Characteristics

Section 3142(g)(3) also directs the Court to consider Griffin's history and characteristics, including, his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal

---

[2] The message data quoted in this paragraph appear to be truncated to the first 49 or 50 characters of the actual messages sent and/or received. Forensic tools have not been able to extract the entirety of each message.

history, and record concerning appearance at court proceedings[.]" These considerations also weigh in favor of detention.

1. *Community Ties*

With respect to Griffin's character and community ties, in August 2021 Griffin's counsel supplied the United States with letters from four of Griffin's friends, his wife, and his father, purporting to vouch for Griffin's character. Three of Griffin's friends, as well as his wife, have since communicated that they withdraw their letters of support. One friend explained that he was "blatantly lied to" about the nature of the investigation when he agreed to write on Griffin's behalf. That Griffin employed false pretenses to obtain a letter of support undermines any argument that Griffin's character is sound. Such tactics indicate an unusual degree of desperation not to be held accountable.

Through his attorney, Griffin also sent a letter to the undersigned Assistant United States Attorney in August 2021, seeking to persuade the United States that Griffin should not be charged. Doubling down on his bet that the FBI would not discover Griffin's deleted Kik and Google Hangouts communications or investigate his Venmo activity, Griffin claimed he "tried to cancel" the nine-year-old's July 14 trip to Vermont, but acquiesced when the child's mother "pressed the issue." (Venmo activity shows Griffin sent about $2000 to the mother on June 24, and $1350 on July 13). In the letter, Griffin also falsely claimed that he "assumed

11

nothing inappropriate would occur with the child present." As the Indictment and this Motion explain, however, Griffin had advised the mother on June 14 that it was "her job, in concert with me, to train" the mother's other minor daughter to be sexually submissive; he boasted in messages described in Count One that he had sexually trained girls as young as seven; and he previously proposed mother-daughter visits for purposes of sexual training.

2. *Physical and Mental Condition & Substance Abuse*

In September 2020, Griffin admitted to having recently received a dual diagnosis of substance abuse and "deep depression," for which he had received inpatient treatment. In his August 2021 letter he stated he was "less than sober" during July 2020, but that he had since received additional treatment and had been sober for eight months. During his initial appearance in Connecticut, however, Griffin admitted to having consumed drugs and/or alcohol in the 24 hours before the hearing. Considering Griffin's history of addiction, his recent relapse strongly suggests he will be unable to abide by conditions if released. Indeed, to the extent Griffin blames his investigation-triggering conduct on his substance abuse, his admission to recent drinking or drug use is a significant indicator of dangerousness.

Furthermore, after he had been arrested on December 10, without prompting, Griffin stated: "Without incriminating myself, I just want to let you guys know that

I'm ashamed you even know my name at all." He also spontaneously stated: "In the time I'm with you guys, in the event I do anything inappropriate, I just want you to know that I'd feel the same way you guys would if I were in your situation. Thank you." Griffin's statements that he was ashamed and contemplated doing "anything inappropriate" are additional indicators of volatility and dangerousness.

### 3. *Prior Interaction with Law Enforcement*

While the nine-year-old daughter and her mother were in Vermont, the mother went to the hospital on two occasions, leaving the girl alone with Griffin. On one occasion, Griffin was pulled over for speeding in his Mercedes convertible with the nine-year-old girl buckled in the front passenger seat. After he explained to the officer that they were on the way to the hospital to see the girl's mother, Griffin presumptively thanked the officer for his leniency. The officer responded, "what leniency?" and wrote Griffin a ticket.

Consistent with this effort to pay off a potential witness to this federal prosecution, according to an October 2020 Vermont State Police report, Griffin offered the driver of a vehicle he crashed into "cash and a check to not call the police." This incident resulted in Griffin being charged with driving under the influence.[3]

---

[3] This incident was resolved in April 2021, with Griffin pleading to misdemeanor grossly negligent operation of a motor vehicle. He paid a $3,000 fine and did not appear in Court.

In his August letter to this AUSA, after claiming he did not intend to hurt the mother or the nine-year old girl, Griffin wrote: "if I can make up for my poor judgment in getting involved with [the mother], volunteer in any way or make other amends, I am eager and anxious to do so."

These data confirm that Griffin will try to talk or buy his way out of trouble. They are evidence of Griffin's determination not to be held accountable. They indicate he presents a flight risk and danger that cannot be addressed with conditions.

4. *Family Ties, Employment & Financial Resources*

During his initial appearance in Connecticut Griffin explained to the Court that he is a graduate of Princeton University with a major in English and a minor in Drama. Griffin is a wealthy man. He purchased the Ludlow Ski house in 2020 for approximately $1.8 million, without a mortgage. He boasted to agents in September 2020 that "I command an estate worth $35 million to $40 million." According to Connecticut DMV records as of 2020 he owned a 44-foot Chris Craft Commander 44 yacht. Griffin not only has an incentive to flee, he also has the means to. *Cf. United States v. Martir,* 782 F.2d at 1144 ("Congress has found" defendants charged with one of the offenses specified in § 3142(e) "pose special risks of flight, and that a 'strong probability arises' that no form of conditional

release will be adequate to secure their appearance."); *Maxwell,* 527 F.Supp.3d at 664 (applying *Martir's* rationale in case involving 18 U.S.C. § 2422 prosecution).

Should Griffin seek to exploit his wealth (in the form of a bail package or otherwise) in an effort to secure pre-trial release, the Court should reject any such effort. First, his wealth does not mitigate the danger he presents. Second, the Bail Reform Act "does not permit a two-tiered bail system in which defendants of lesser means are detained pending trial while wealthy defendants are released to self-funded private jails." *United States v. Boustani*, 932 F.3d 79, 82 (2d Cir. 2019); *see also United States v. Maxwell*, 510 F.Supp.3d 165, 177 (S.D.N.Y. 2020).

Though he is married with three minor children (whose welfare has been investigated), the government understands he had moved out of the marital home by at least late 2020. As noted above, his wife has rescinded the letter of support she wrote in August 2021. Until recently he worked as a "Senior Producer" for a national news organization. Unlike the overwhelming majority of criminal defendants who come before the Court, Griffin has enjoyed rarified privilege and a place in wealthy society. He faces not only a substantial loss of liberty, but also extraordinary reputational loss. It appears he has no law-abiding community to return to.

Finally, the Court should reject any argument that the timing of this indictment – occurring more than a year after the search of his Vermont ski house

– suggests the United States does not view him as danger or a flight risk. The United States' efforts to conduct a thorough and fair investigation before asking the Grand Jury to return the Indictment should not tip the § 3142(g) scales toward pre-trial release. This is especially true when Griffin's actions, including his attempts to obfuscate through false statements, inducing letters of reference under false pretenses, and deleting electronic evidence, required sustained investigative effort. Now that he has been charged, Griffin's incentives to flee or take other dangerous measures to avoid accountability are substantially higher than they previously were.

## V. Conclusion

Griffin is charged with sexually victimizing a nine-year old girl, and attempting to victimize other minor girls. The evidence of this heinous crime includes his communications, his financial records, his admissions, and his provably false denials. If convicted he faces at least 10 years of incarceration, probably much more. He has a history of mental illness and substance abuse, and he recently admitted to continuing to use intoxicants. He faces not only a significant loss of liberty, but also extraordinary reputational damage. He has dishonestly tried to talk his way out of being held accountable. He has tried to buy his way out of trouble. There is no set of conditions that can assure the Court of his continued appearance or address the danger he presents if released.

Respectfully submitted,

NIKOLAS P. KEREST
UNITED STATES ATTORNEY

*/s/ Michael P. Drescher*
MICHAEL P. DRESCHER
ASSISTANT UNITED STATES ATTORNEY
11 Elmwood Ave
Burlington, VT  05401
(802) 951-6725
michael.drescher@usdoj.gov